# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GLENDA JEAN WALLACE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ANDREW M. SAUL, )<br>Commissioner of the Social )<br>Security Administration,[1] )<br>)<br>Defendant. ) | Case No. CIV-19-027-SPS |

## OPINION AND ORDER

The claimant Glenda Jean Wallace requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that

---

[1] On June 4, 2019, Andrew M. Saul became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. Saul is substituted for Nancy A. Berryhill as the Defendant in this action.

[s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

-2-

(10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was fifty-two years old at the time of the administrative hearing (Tr. 34, 258). She has a high school education and has worked as a daycare worker, glass inspector, cashier II, ice cream server, grocery stock clerk, fast food manager trainee, cashier stocker, cafeteria food service worker, and sandwich maker (Tr. 26, 308). The claimant alleges that she has been unable to work since January 11, 2015, due to migraine headaches, swelling in her feet, a bulging disc, high blood pressure, anemia, acid reflux, depression, arthritis in her knees, and carpal tunnel syndrome (Tr. 307-08).

## Procedural History

On January 29, 2015, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 12, 258-82). Her applications were denied. ALJ Dierdre O. Dexter conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated January 19, 2018 (Tr. 12-27). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioners' final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) with the following non-exertional limitations: (i) simple, routine, and repetitive tasks, but not at a fast-paced production rate, (ii) regular breaks of at least fifteen minutes every two hours, (iii) occasional interaction with supervisors as needed to receive work instructions, (iv) can work in proximity to co-workers, but should have no more than occasional direct work interaction with co-workers, (v) never interact with the general public, and (vi) no more than ordinary and routine changes in the work setting or duties (Tr. 17-18). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the national economy, *e. g.*, merchandise marker, electrical accessory assembler, and bakery racker (Tr. 25-27).

## Review

The claimant contends that the ALJ erred by failing to: (i) properly analyze the consultative opinions of Dr. Easley and Dr. Bryant, (ii) properly evaluate and account for her pain, (iii) include all of her limitations in the RFC and in the hypothetical question posed to the vocational expert ("VE"), (iv) provide a narrative discussion describing how the evidence supports her RFC, and (v) account for her obesity. The Court finds these contentions unpersuasive for the following reasons.

The ALJ found that the claimant had the severe impairments of disorder of the spine, obesity, depression, and anxiety, but that her gastroesophageal reflux disease ("GERD")

and hypertension were non-severe (Tr. 15). The relevant medical records reveal that the claimant was sporadically treated for hypertension and GERD through Muscogee Nation providers between October 2012 and February 2017 (Tr. 486-518, 616-24, 679-712). As to her back pain, the review of symptoms section from a treatment note dated January 31, 2017, denotes back pain but there was not a corresponding diagnosis and the claimant was not treated for pain (Tr. 684-88). At a follow-up appointment on February 14, 2017, the claimant reported bilateral ankle swelling and back pain (Tr. 679-82). On physical exam, the claimant had trace non-pitting edema in her legs and 1+ non-pitting edema in her ankles (Tr. 681). X-rays of the claimant's thoracic spine taken that day revealed mild intervertebral disc space narrowing of the midthoracic spine with endplate sclerosis and marginal osteophytes, all of which were described as "degenerative changes." (Tr. 683). X-rays of the claimant's lumbar spine also taken that day revealed mild degenerative spondylosis and facet arthrosis changes and mild intervertebral disc space narrowing from L2-3 to L5-S1, all of which were also described as "degenerative changes." (Tr. 678). By February 23, 2017, the claimant's ankle edema had resolved, she rated her pain at four on a ten-point scale, and she denied decreased mobility (Tr. 673-77).

As to her mental impairments, various providers performed mental status examinations between October 2012 and March 2017, all of which were normal (Tr. 487-517, 676-707). Jarvis Thompson, a licensed professional counselor at CREOKS, established an initial mental health treatment plan on July 17, 2015, which included diagnoses of moderate, recurrent depression with psychosis and generalized anxiety disorder (Tr. 636-47). A CREOKS medication record indicates that Dr. Werlla prescribed

anti-psychotic medication in August 2015, which was discontinued at an unknown date, but the record does not contain any treatment notes from Dr. Werlla (Tr. 647). At an appointment on December 8, 2015, for issues unrelated to her disability claim, the claimant's provider noted she was talking to herself and staring at the ceiling but was fully oriented (Tr. 709-10).

Dr. Kobel conducted a consultative mental status examination of the claimant on May 29, 2015 (Tr. 585-89). She observed that the claimant presented as fatigued and depressed with a restricted affect but had a very cooperative attitude (Tr. 585-88). She administered the Montreal Cognitive Assessment ("MOCA"), the results of which suggested a normal level of cognitive functioning (Tr. 587). She found the claimant's memory, attention, and concentration were intact; her speech was normal; and her thought processes were logical, linear, and goal-directed (Tr. 588). Dr. Kobel noted the claimant provided appropriate responses to questions related to judgment, insight, and abstraction (Tr. 588). Dr. Kobel's impression was "no diagnosis," but she indicated the claimant had a "[history of] Depression, now described as 'situational.'" (Tr. 588).

On December 14, 2015, Dr. Bryant conducted a consultative mental status examination of the claimant (Tr. 650-53). The claimant reported that she experienced daily auditory hallucinations, which she suggested might be a sign of schizophrenia (Tr. 650). When describing the claimant's daily activities in his report, Dr. Bryant noted her reporting was so poor that he could not tell what she could do (Tr. 651). He also noted the claimant said "very quickly" that she could manage her own benefits because she could pay utilities and rent and buy necessities (Tr. 652). Dr. Bryant indicated that the claimant had

schizophrenia and that her thought processes were seriously compromised, but when she focused, her test performance was approximately at the average IQ level (Tr. 653).

Dr. Easley conducted a disability examination of the claimant on December 17, 2015 (Tr. 655-60). Dr. Easley observed the claimant was cooperative, fully oriented, and had a flat affect (Tr. 656). He noted the claimant conversed well but mumbled to herself when not actively addressed (Tr. 656). Dr. Easley also observed that the claimant was able to climb onto the exam table and rise from a sitting position without difficulty (Tr. 657). On physical examination, Dr. Easley found no edema in the claimant's extremities, muscle strength of 4/5 in her upper extremities and 5/5 in her lower extremities, bilateral grip strength of 4/5, full rotation in her wrists, full range of motion in her right wrist hinge, and reduced range of motion in her left wrist hinge (Tr. 657-59). As to her back, he found mild tenderness to palpation in her thoracic spine, a positive straight leg raise test on the right at forty-five degrees, full extension, limited flexion, and full lateral flexion (Tr. 657-58). Dr. Easley assessed the claimant with bipolar disorder with psychotic features, hypertension, posttraumatic stress disorder ("PTSD"), and back pain (Tr. 657).

State Agency physician Dr. Bell reviewed the record on December 29, 2015 and found the claimant could perform the full range of medium work in light of her severe spine disorder and non-severe gastrointestinal disorder (Tr. 119-20). State agency psychologist Dr. Farrell reviewed the record on January 7, 2016 and found the claimant's severe mental impairments moderately limited her ability to perform daily activities, maintain social functioning, and maintain concentration, persistence, or pace (Tr. 117).

At the administrative hearing, the claimant testified that she was unable to work because of swelling in her left arm, back pain, foot pain, high blood pressure, and urinary frequency (Tr. 62-63). She further testified that her left wrist swells if she uses it too much, she sometimes drops things from her left hand, and has numbness and tingling in her left middle and index fingers (Tr. 45, 71). The claimant stated that she treats her pain with over the counter medication (Tr. 74). As to specific limitations, the claimant stated that she could stand for twenty minutes before needing to sit, sit for two hours total in thirty-minute increments, and walk one-half of a block before she gets "short of breath." (Tr. 63, 69-70).

In her written opinion at step two, the ALJ rejected Dr. Bryant's schizophrenia diagnosis and Dr. Easley's bipolar disorder and PTSD diagnoses because they were inconsistent with the treating records from CREOKS (Tr. 15). At step four, the ALJ summarized the medical evidence, including the claimant's treatment for hypertension, the x-rays of her spine, her obesity, and all the consultative examinations (Tr. 18-24). In discussing the opinion evidence, the ALJ concluded that Dr. Bryant offered no functional limitations and determined that his examination findings were inconsistent with Dr. Kobel's consultative mental status examination, the claimant's MOCA score, her widely varying responses to his questions, her reports to other providers, and the totality of the medical record (Tr. 22). Similarly, after thoroughly summarizing Dr. Easley's consultative examination, the ALJ determined he offered no functional limitations that contradicted the RFC (Tr. 22-23). The ALJ gave the reviewing opinions of Dr. Bell and Dr. Farrell partial weight, finding the medical evidence supported greater limitations (Tr. 24-25).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). The ALJ's treatment of the consultative examining opinions, as described above, meets these standards.

As to Dr. Easley's opinion, the claimant contends that the ALJ failed to account for all the limitations in his opinion, particularly her reduced grip strength and her reduced range of motion in her left wrist hinge, but this is not borne out in the opinion as the ALJ noted Dr. Easley's findings regarding the claimant's arms, wrists, and hands (Tr. 23). The claimant further contends that the ALJ failed to weigh Dr. Easley's opinion, but does not point to any limitations Dr. Easley identified that the ALJ did not adopt. Thus, remand to

expressly assign a weight to his opinion is not warranted. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163 (10th Cir. 2012) (ALJ's failure to assign a specific weight to a consulting examiner's opinion was harmless where the opinion was generally consistent with the ALJ's residual functional capacity findings). The claimant also contends that the ALJ should have recontacted Dr. Easley for clarification because his assessment was incomplete; however, there is no basis in the record for this assumption. If the ALJ had doubts as to any of the evidence, she *could have* recontacted Dr. Easley to clear it up, *see* 20 C.F.R. § 404.1520b(b), 416.920b(b) ("[I]f after considering the evidence we determine we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency . . . We may recontact your medical source."), but she was under no obligation to do so, as the claimant implies.

Regarding Dr. Bryant's opinion, the claimant argues that the ALJ formed her own medical opinion by rejecting his schizophrenia diagnosis and ignored his opinion that the claimant's thought processes were seriously compromised. As stated above, the ALJ rejected Dr. Bryant's schizophrenia diagnosis because it was inconsistent with the treatment notes from CREOKS, which is an appropriate basis to reject his diagnosis. The claimant correctly points out that the ALJ did not specifically mention Dr. Bryant's statement about her thought processes being seriously compromised. However, such statement is a clinical observation rather than a medical opinion, and because Dr. Bryant did not indicate what, if any, functional limitations resulted from the claimant's compromised thought processes, the ALJ was not required to specifically discuss this statement. *See, e. g., Moua v. Colvin*, 541 Fed. Appx. 794, 797-98 (10th Cir. 2013) ("Dr.

Bhakta's treatment notes do not offer any medical opinions concerning [the claimant's] abilities or limitations. . . Thus, there was no pertinent medical opinion for the ALJ to weigh."); 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1) (defining medical opinions as "judgments about the nature and severity of [a claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions"). In any event, the ALJ sufficiently summarized Dr. Bryant's consultative examination findings, properly noting concerns with his opinion in contrast to the record related to the claimant's treatment for mental impairments. "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton*, 79 F.3d at 1009-10. Here, the ALJ did not recite every one of Dr. Bryant's examination findings, but she clearly considered his examination (Tr. 21-23).

The claimant next contends that the ALJ failed to perform a proper analysis of her subjective statements of pain. The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).³ Tenth Circuit precedent is in accord with the Commissioner's regulations but characterizes the evaluation as a three-part test. *See, e. g., Keyes-Zachary,* 695 F.3d at 1166-67, citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987).⁴ As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. § 404.1529(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *7-8. An ALJ's symptom evaluation is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias,* 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted].

---

³ SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

⁴ Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-4 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna)* and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-46 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*). The undersigned Magistrate Judge agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. Rul. 16–3p, 2017 WL 5180304 at *10.

In this case, the Court finds that the ALJ set out the appropriate analysis, and cited evidence supporting her reasons for finding that the claimant's subjective complaints were not believable to the extent alleged, *i. e.*, she gave clear and specific reasons that were specifically linked to the evidence in the record. Specifically, the ALJ noted inconsistencies between the claimant's subjective statements and: (i) Dr. Kobel's consultative mental status examination, (ii) her May 2015 diagnosis of benign hypertension, (iii) Dr. Easley's consultative examination, (iv) her consistently normal mental status examinations, and (v) the effectiveness of medication and diet modification in reducing her blood pressure (Tr. 24). Accordingly, the ALJ's determination is entitled to deference and the Court finds no error in analyzing the claimant's subjective statements.

The claimant's final step four contention is that ALJ failed to explain how the RFC limitations accounted for her impairments, particularly her severe obesity, which she contends the ALJ ignored at step four. The Court finds the ALJ provided a summarized discussion of all the relevant evidence in the record, including the claimant's obesity, and her opinion clearly indicates that she adequately considered the medical evidence of record in reaching her conclusions regarding the claimant's RFC. Furthermore, the only suggested limitations in the medical record were those stated by the state reviewing physicians, which the ALJ adopted, *added more restrictive limitations* of her own, *and still concluded* that the claimant could perform a reduced range of light work. Additionally,

the claimant did not raise obesity as a severe impairment in her application for benefits or at the administrative hearing, but more importantly, she does not point to any evidence in the medical record (or in her testimony for that matter) showing her obesity exacerbated her other impairments. *See Callicoatt v. Astrue,* 296 Fed. Appx. 700, 702 (10th Cir. 2008) ("Without some evidence that her obesity was relevant to her other alleged impairments during the relevant time frame, the ALJ was not required to consider the claimant's obesity.").

Finally, the claimant contends that the ALJ failed to include all her limitations in the hypothetical question he posed to the VE, and thus his step five findings are erroneous as well. Specifically, she asserts that the hypothetical question should have included limitations on the use of her arms and hands because she exhibited reduced grip strength bilaterally and reduced range of motion in her left wrist at Dr. Easley's consultative examination, and her right wrist was swollen at Dr. Bryant's consultative examination. However, as set forth above, the ALJ clearly considered both consultative examinations, and the claimant does not point to any other evidence to support the limitations she claims. Accordingly, the ALJ was not required to include additional limitations in her RFC assessment, or in her hypothetical question posed to the VE. *See Qualls*, 206 F.3d at 1373 ("We have already rejected [the claimant's] challenges to the ALJ's RFC assessment. The ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment. Therefore, the VE's answer to that question provided a proper basis for the ALJ's disability decision."); *see also Adams v. Colvin*, 553

Fed. Appx. 811, 815 (10th Cir. 2014) ("An ALJ does not need to account for a limitation belied by the record when setting a claimant's RFC."), *citing Qualls*, 206 F.3d at 1372.

When all the evidence is taken into account, the conclusion that the claimant could perform a reduced range of light work is thus supported by substantial evidence. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). The gist of the claimant's appeal is that the Court should re-weigh the evidence and determine her RFC differently from the Commissioner, which the Court simply cannot do. *See Casias*, 933 F.2d at 800 ("In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency."). *See also Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), citing 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946.

**Conclusion**

In summary, the Court finds that correct legal standards were applied, and that the decision of the Commissioner is supported by substantial evidence. The Commissioner's decision is therefore hereby AFFIRMED.

**DATED** this 25th day of March, 2020.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**